**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ANTHONY GIOVAGNOLI, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiffs*, | § § | Civil Action No.  SA-17-CV-753-XR |
| *v*. | § § § | |
| GLOBALSCAPE, INC., MATTHEW C. GOULET, and JAMES W. ALBRECHT, JR., | § § § § | |
| *Defendants*. | § § | |

**ORDER**

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court GRANTS Plaintiff Irfan Rahman's Motion to Appoint Counsel and Motion for Appointment as Lead Plaintiff (Docket no. 11) and DENIES Plaintiff Brian Fong's Motion for Appointment as Lead Plaintiff and Approval of Counsel (Docket no. 8).

**BACKGROUND**

On August 9, 2017, Plaintiff Anthony Giovagnoli filed his Complaint on behalf of all investors who purchased or otherwise acquired Defendant GlobalSCAPE, Inc. ("Global") common stock between January 26, 2017, and August 7, 2017, inclusive (the "Class Period"). Docket no. 1. Plaintiff brings claims on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. § 240.10b-5. *Id.*

1

Plaintiff states that Global develops and sells computer software that provides secure information exchange, file transfer, and file sharing capabilities for enterprises and consumers. *Id.* at 2. Plaintiff alleges Global's primary business is the sale and support of managed file transfer software for enterprises. *Id.*

Plaintiff alleges that on August7, 2017, after trading closed, Global disclosed that its audit committee "has been conducting an investigation into certain transactions in the fourth quarter of 2016 involving improper arrangements with customers that circumvented the Company's internal controls and their potential effect on previously reported revenue." *Id.* Global also disclosed that it "intends to effect a restatement of its previously issued financial statements through filing an amended Annual Report on Form 10-K for the year ended December 31, 2016 and an amended Quarterly Report on Form 10-Q for the quarter ended March 31, 2017." *Id.* Subsequently, Global's share price allegedly fell 17.66% to close at $3.87 on August 8, 2017, causing millions in losses to investors. *Id.*

Plaintiff alleges that Defendants made false and/or misleading statements and failed to disclose material adverse facts about Global's business, operations, and prospects. *Id.* Plaintiff alleges Defendants failed to disclose that (1) Global overstated the reported amounts of accounts receivable as of December 31, 2016, and license revenue for the three months and year ended December 31, 2016, by approximately $403,000 and $396,000, respectively, resulting in the overstatement of Global's revenues for those periods by the same amounts; (2) Global's total current assets and total assets were overstated by $292,000; (3) Global's total stockholder equity and total liabilities and stockholders' equity were overstated by $217,000 and $292,000, respectively; (4) Global lacked adequate internal controls over financial reporting; and (5) that as

2

a result, Global's publicly disseminated financial statements were materially false and misleading. *Id.*at 2–3.

Plaintiff Giovagnoli states he was a shareholder of Global during the Class Period, and he alleges he acquired and held shares of Global at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions. *Id.* at 3–4. Plaintiff states that Defendant James W. Albrecht, Jr. served as Global's Chief Financial Officer, Executive Vice President, and Treasurer at all relevant times, and that Defendant Matthew C. Goulet served as Global's Chief Executive Officer at all relevant times. *Id.* at 4.

Plaintiff alleges that the individual Defendants, due to their positions, possessed the power and authority to control the content and form of Global's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers, and investors. *Id.* Plaintiff alleges the individual Defendants authorized the publication of the documents, presentations, and materials alleged to be misleading prior to their issuance and had the ability and opportunity to prevent the issuance of the false statements or to cause them to be corrected. *Id.* Plaintiff alleges the individual Defendants knew that adverse facts were not disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. *Id.* at 4–5.

Plaintiff brings this action as a class action on behalf of all persons and entities who purchased or otherwise acquired Global securities during the Class Period. *Id.* at 22. On October 10, 2017, Plaintiff Brian Fong filed a Motion for Appointment as Lead Plaintiff and Approval of Counsel. Docket no. 8. On the same date, Plaintiff Irfan Rahman filed a Motion to Appoint

Counsel and for Appointment as Lead Plaintiff. Docket no. 11. On October 24, 2017, the Court took both motions under advisement and ordered Fong and Rahman to file with the Court as to whether they were seeking exclusive individual status as lead plaintiff, or if they were seeking to be named co-lead plaintiffs by October 31, 2017. On October 31, 2017, Rahman filed a Response stating he seeks to be named exclusive Lead Plaintiff. Docket no. 16. Fong failed to respond to the Court's order.

**ANALYSIS**

### I.      Legal Standard

The appointment of lead plaintiff in a securities class action is governed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* 15 U.S.C. § 78u–4. Under the PSLRA, a lead plaintiff should be selected early in the case, and is to select and retain lead counsel, subject to court approval. See 15 U.S.C. § 78u–4(a)(3)(B)(v). A main goal of the PSLRA is "to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being 'lawyer-driven.'" *Strong v. AthroCare Corp.*, No. A-08-CA-574-SS, 2008 WL 11334942, at *3 (W.D. Tex. Dec. 10, 2008) (quoting *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411–12 (S.D. Tex. 2000)).

The Court is to consider all timely motions made by purported class members seeking to be appointed lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(1). The Court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.*

The PSLRA directs the Court to adopt a presumption that the most adequate plaintiff is the person or group of persons that (1) filed a complaint or a timely motion to be appointed lead

4

plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

## II.    Application

Plaintiffs Fong and Rahman both move to be named lead plaintiff in this case. As an initial matter, both Plaintiffs filed a timely motion to be appointed lead plaintiff. The PSLRA requires putative class members to move for appointment as lead plaintiff within sixty days of the date notice of the action is issued. 15 U.S.C. § 78u–4(a)(3)(A)(i)(II). In this case, notice was published on August 9, 2017. Docket no. 11-2 at 5. Fong and Rahman both filed motions for appointment as lead plaintiff on October 10, 2017, which is within the sixty-day window.[1] Accordingly, Fong and Rahman both filed a timely motion to be appointed lead plaintiff.

The PSLRA does not define "largest financial interest" or explain how such a determination should be made. Courts, however, have found the following factors, often referred to as the "Olsten–Lax" factors, relevant to this inquiry: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period. *See In re Waste Mgmt., Inc.*, 128 F. Supp. 2d at 414; *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 at \*5 (N.D. Ill. 1997)); *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) (considering the same factors).

---

[1]    The Court recognizes that the sixty-day window from August 9, 2017, ended on October 8, 2017. Given that October 8 was a Sunday and October 9 was a federal holiday, however, the sixty-day window effectively ended on October 10, 2017.

Courts consistently consider the fourth factor—the approximate losses suffered—as most determinative to identify the plaintiff with the largest financial loss. See *Richardson v. TVIA, Inc.*, 2007 WL 1129344 at \*4 (N.D. Cal. 2007) (citing *In re Vicuron Pharma., Inc. Sec. Litig.*, 225 F.R.D. 508, 510–11 (E.D. Pa. 2004); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses")); *Vladimir v. Bioenvision, Inc.*, 2007 WL 4526532 at \*5 (S.D.N.Y. 2007). Accordingly, the Court will concentrate on the approximate losses claimed by each movant to determine which plaintiff has the largest financial interest.

Both Plaintiffs claim they have the largest financial interest in the action. Fong alleges he purchased 1,500 shares during the Class Period and lost $2,280.00 in connection with his purchases of Global securities. Docket no. 9 at 3–4. Rahman, on the other hand, alleges he purchased 5,500 shares during the Class Period, expended $24,523 to purchase those shares, and suffered an estimated loss of $3,439.66 as a result of Defendants' alleged misconduct. Docket no. 11-2 at 9. Rahman allegedly purchased more shares than Fong, and Rahman allegedly suffered a greater loss than Fong. Accordingly, the Court finds that Rahman has the greatest financial interest in the litigation.

The lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(1)(cc). Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Although the inquiry to determine the lead plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed lead plaintiff must at least make a preliminary showing that the plaintiff has claims typical of those of the putative class and the capacity to provide adequate representation for those class members. *In re Waste Mgmt., Inc.*, 128 F. Supp. 2d at 411.

A proposed lead plaintiff's claims are typical of the class if there are "no differences among the class members that would substantially alter the proof required for one member's claims versus another's." *Richard NMI Bell v. Acendant Solutions, Inc.*, 2002 WL 638571, *5 (N.D. Tex. 2002) (citing *Gluck*, 976 F. Supp at 546). It is not necessary that a proposed lead plaintiff's claims be identical to the claims of other class members. *Id.* Here, Rahman purchased shares during the Class Period at allegedly artificially inflated prices and was allegedly harmed when the share prices fell following Defendants' actions, as is allegedly true of all members of the putative class. Docket no. 11-2 at 11. Accordingly, the Court finds that Rahman's claims are typical of the class.

A proposed lead plaintiff is an adequate representative by showing zeal and competence of the representative's counsel, and a willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Rahman has retained experienced counsel to vigorously and efficiently litigate this action, as evidenced by the relevant pleadings. Rahman states that there is no antagonism between his interests and those of putative class members, and because of his losses, he has a sufficient interest in the outcome of this action and will fairly and

adequately protected the interests of the class. Docket no. 11-2 at 11. Accordingly, the Court finds that Rahman is an adequate representative of the class.

Given that Plaintiff Rahman filed a timely motion to be appointed lead plaintiff, is the movant with the largest financial interest in the case, and satisfies the typicality and adequacy requirements of Rule 23, the Court finds that Rahman should be named lead plaintiff.

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court approves of Rahman's selection of Block & Leviton as lead counsel and the Kendall Law Group as liaison counsel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff Irfan Rahman's Motion to appoint Irfan as lead plaintiff and select Block & Leviton as lead counsel and the Kendall Law Group as liaison counsel. Docket no. 11. The Court DENIES Plaintiff Brian Fong's Motion for Appointment as Lead Plaintiff and Approval of Counsel (Docket no. 8).

It is so ORDERED.

SIGNED this 6th day of November, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

8